UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X

SHAMARLON VILLAFANA and SHARON
VILLAFANA,

       Plaintiffs,

  -against-

THE CITY OF NEW YORK, P.O. JAMES
MCCULLOUGH [SHIELD # 31112], CAPTAIN
LENZ, SERGEANT WEBER, DETECTIVE
ALGIERI, DETECTIVE HIRSCH, DETECTIVE
PARKS, DETECTIVE ZAMBRANO,
DETECTIVE MCDOWELL, DETECTIVE
JENNINGS and P.O. MARIN,

       Defendants.
------------------------------------------------------------X

Case No. 13 CV 3591
(WFK) (RER)

**AMENDED COMPLAINT**

JURY DEMAND

Plaintiffs, SHAMARLON VILLAFANA and SHARON VILLAFANA, by their attorney, The Law Offices of UGO UZOH, P.C., complaining of the defendants herein, The City of New York, P.O. James McCullough [Shield # 31112], Captain Lenz, Sergeant Weber, Detective Algieri, Detective Hirsch, Detective Parks, Detective Zambrano, Detective McDowell, Detective Jennings and P.O. Marin (collectively, "defendants"), respectfully allege as follows:

NATURE OF THE ACTION

1.   This is an action at law to redress the deprivation of rights secured to the plaintiffs under color of statute, ordinance, regulation, custom, and/or to redress the deprivation of rights, privileges, and immunities secured to the plaintiffs by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the Constitution of the United States, and by Title 42 U.S.C. §1983 [and § 1985], [and arising under the law and statutes of the City and State of New York].

JURISDICTION

2.   The jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 1983, 28 U.S.C. § 1343, 28 U.S.C. § 1331 and 28 U.S.C. § 1367, and under the First,

Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

3.    As the deprivation of rights complained of herein occurred within the Eastern District of New York, venue is proper in this district pursuant to 28 U.S.C. §1391 (b) and (c).

COMPLIANCE WITH N.Y. GEN. MUN. LAW REQUIREMENTS

4.    Plaintiffs timely made and served their respective notice of claims upon the defendants in compliance with N.Y. Gen. Mun. Law § 50-e.

5.    At least thirty days have elapsed since the service of aforesaid notice of claims and adjustment or payment thereof has been neglected or refused.

6.    This action is commenced within one year and ninety days after the happening of the event(s) upon which the claim(s) are based.

THE PARTIES

7.    Plaintiffs, mother and daughter, are and were at all times material herein residents of the United States and the State of New York.

8.    At all relevant times, defendants P.O. James McCullough [Shield # 31112], Captain Lenz, Sergeant Weber, Detective Algieri, Detective Hirsch, Detective Parks, Detective Zambrano, Detective McDowell, Detective Jennings and P.O. Marin (hereinafter "defendant officers") were, upon information and belief, and still are, agents and/or officers employed by defendant City of New York.

9.    At all times herein, the defendant officers were acting under the color of their official capacity, and their acts were/are performed under color of the statutes and ordinances of the City of New York and/or the State of New York. Defendant officers were/are the servants, agents, and employees of their co-defendant, the City of New York, such that their acts are imputed to the City of New York.

10.    At all relevant times, the defendant City of New York was and is a municipal corporation duly organized and existing under the laws of the State of New York, and was/is the employer of the defendant officers, and the actions of the defendant officers complained of herein were done as part of the custom,

practice, usage, regulation and/or at the direction of the defendant City of New York.

11.  Plaintiffs are suing the defendant officers in their individual and official capacities.

FACTUAL ALLEGATIONS COMMON TO ALL CAUSES OF ACTION

12.  On or about July 3, 2012, at approximately 5:30 a.m., defendant officers, acting in concert, arrested plaintiffs without cause at their home which is located at 760 Park Avenue, Apt. 1L, Brooklyn, New York, and charged each plaintiff with PL 220.50(2)  'Criminally using drug paraphernalia in the second degree', among other charges.

13.  Plaintiffs, however, were not in possession of any drug paraphernalia, did not sell any drug paraphernalia, and did not commit any offense against the laws of New York City and/or State for which any arrest may be lawfully made.

14.  Prior to the arrest, plaintiffs were asleep in their respective bedrooms when they were awakened by defendant officers' flashing lights, loud sounds and noises.

15.  As plaintiff Sharon Villafana stepped out of her bed and attempted to find out what was going on, defendant officers ordered her to "Get the f**k down."

16.  Plaintiff Sharon Villafana promptly complied and immediately threw herself down to the floor.

17.  After a few moments, defendant officers directed plaintiff Sharon Villafana to get up from the floor and go into the living room.

18.  Upon entering the living room as she was directed, plaintiff Sharon Villafana was tightly handcuffed by defendant officers with her hands placed behind her back.

19.  While in the living room, plaintiff Sharon Villafana noticed that her nephew, Anderson Charles, was crying with his face swollen and looking like he was beat up, and was also handcuffed with his hands placed behind his back.

20.  As plaintiff Shamarlon Villafana woke up from her sleep, she heard defendant officers yelling and screaming in front of her bedroom door that

3

they were going to knock down her door if she doesn't open the door within 5 seconds.

21.     Plaintiff Shamarlon Villafana immediately jumped out of her bed and rushed to the door to open the door.

22.     As plaintiff Shamarlon Villafana got to the door and attempted to open it, defendant officers forcibly knocked down the door.

23.     As the door fell, it hit plaintiff Shamarlon Villafana on her forehead and sent her flying up in the air.

24.     Plaintiff Shamarlon Villafana was caused to hit her lower back and the back of her head on the dresser and then fell down on the floor.

25.     Plaintiff Shamarlon Villafana was rendered unconscious as a result.

26.     Immediately upon regaining consciousness, plaintiff Shamarlon Villafana saw a gun that was pointed at her by defendant officers.

27.     Plaintiff Shamarlon Villafana who was crying at the time was then directed by defendant officers to go into the living room.

28.     Once in the living room, plaintiff Shamarlon Villafana was tightly handcuffed with her hands placed behind her back.

29.     The defendant officers kept threatening to shoot and kill the plaintiffs with their guns.

30.     Additionally, defendant officers emptied trash all over plaintiffs' home and clearly stated that they "don't have to clean up this s**t."

31.     The defendant officers indicated that the plaintiffs had been under their surveillance for several months and that they had evidence showing that plaintiffs deal drugs and run guns.

32.     The defendant officers repeatedly asked the plaintiffs to tell them where the plaintiffs allegedly hid their stash of drugs and guns or they would find the stash themselves, and threatened to incarcerate the plaintiffs for a lengthy period of time should they labor to find the stash of drugs and guns themselves.

33.     Within approximately thirty (30) minutes from the time the defendant officers first forced their way into the plaintiffs' home, defendant officers

removed plaintiffs from their home and placed plaintiffs in a police van with plaintiff Shamarlon Villafana wearing only her nightgown and plaintiff Sharon Villafana still in her nightwear.

34.     The defendant officers however returned back to plaintiffs' home and continued their search of the plaintiffs' home, trashed the plaintiffs' home and destroyed several of plaintiffs' properties in the process including but not limited to plaintiffs' cabinet space saver with glass and a remote.

35.     The defendant officers did not find anything illegal from their search of the plaintiffs' home.

36.     Notwithstanding the above, defendant officers still arrested the plaintiffs, held plaintiffs in their police vehicle, and detained the plaintiffs in their said vehicle for several hours.

37.     That during the lengthy period of time that the plaintiffs were detained in the said police vehicle, defendant officers were merely driving around from one place to the other including but not limited to stores and restaurants.

38.     That defendant officers were intentionally and repeatedly turning the light on and off in the back of the vehicle where the plaintiffs were detained.

39.     In addition, defendant officers would turn up the air conditioning in the back of the vehicle really high and make the plaintiffs cold or turn the air conditioning in the back of the vehicle off and make the plaintiffs hot.

40.     Eventually, plaintiffs were transported to the NYPD-79th Precinct where they were further detained.

41.     After detaining the plaintiffs for a lengthy period of time at the NYPD-79th Precinct, plaintiffs were transported to the Central Booking to await arraignment.

42.     While plaintiffs were awaiting arraignment, defendant officers met with prosecutors employed by the Kings County District Attorney's Office.

43.     During this meeting, defendant officers falsely stated to the prosecutors, among other things, that plaintiffs were in possession of drug paraphernalia and/or sold drug paraphernalia.

44.     Based on the false testimony of defendant officers, a prosecution was commenced against plaintiff Sharon Villafana.

45.     The prosecutors however declined to prosecute plaintiff Shamarlon Villafana who was summarily released from her unlawful detention after approximately twenty four (24) hours.

46.     On or about July 4, 2012, following plaintiff Sharon Villafana's arraignment, the false charge(s) levied against plaintiff Sharon Villafana was summarily dismissed.

47.     As a result of the assault and conduct of the defendant officers, plaintiffs were caused to sustain serious injuries on various parts of their respective bodies.

48.     When plaintiff Sharon Villafana requested defendant officers to remove or loosen the handcuffs placed on her as the handcuffs were too tight and were cutting into her skin causing her to experience pain and numbness in her arms, defendant officers refused stating that she was not going to die.

49.     Eventually, after plaintiff Sharon Villafana's arms were extremely swollen and bleeding, defendant officers extended the handcuffs with another set of handcuffs.

50.     Because of their injuries, the plaintiffs requested to be transported to the hospital for medical care and attention.

51.     However, defendant officers informed the plaintiffs that the plaintiffs' arrest processing and arraignment would be delayed and did not provide the plaintiffs with any medical care or treatment.

52.     That the defendant officers denied the plaintiffs access to medication, food and drink, as well as contact and visitation by friends and family including but not limited to plaintiff Sharon Villafana's remaining seven (7) minor children and plaintiff Shamarlon Villafana's siblings.

53.     That each and every officer who responded to and/or was present at the location of the arrest and assault described herein knew and was fully aware that plaintiffs did not commit any crime or offense, and had a realistic opportunity to intervene to prevent the harm detailed above from occurring.

54.     Nonetheless, defendant officers did absolutely nothing to discourage and prevent the harm detailed above from occurring and failed to intervene.

55.     As a result of the aforesaid actions by defendant officers, plaintiffs suffered and continue to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, loss of rights to familial association, wages and financial losses, pain and damage, and damage to reputation.

FIRST CAUSE OF ACTION: 42 U.S.C. § 1983

56.     By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 55 of this complaint as though fully set forth herein.

57.     The conduct of defendant officers, as described herein, amounted to false arrest, excessive use of force, malicious abuse of process, first amendment retaliation, failure to intervene, deliberate indifference, poor conditions of confinement, cruel and inhuman treatment, cruel and unusual punishment, illegal and unreasonable stop, frisk, search and seizure, loss of rights to familial association, racial profiling, pattern of harassment, abuse of authority, unlawful entry, conspiracy, discrimination, fabrication of evidence, denial of equal protection of the laws, denial of right to a fair trial, denial of due process rights and malicious prosecution.

58.     The defendants denied plaintiffs treatment needed to remedy their serious medical conditions and did so because of their deliberate indifference to plaintiffs' need for medical treatment and care.

59.     Such conduct violated plaintiffs' rights under 42 U.S.C. § 1983 and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

60.     Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SECOND CAUSE OF ACTION: FAILURE TO TRAIN/SUPERVISE/DISCIPLINE AND MUNICIPAL POLICY - against defendant City of New York

61.  By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 60 of this complaint as though fully set forth herein.

62.  Defendant City of New York, acting through the New York Police Department, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise or discipline its police officers concerning correct practices in conducting investigations, the use of force, interviewing of witnesses and informants, assessment of the credibility of witnesses and informants, reasonable search of individuals and/or their properties, the seizure, voucher and/or release of seized properties, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and obligation to effect an arrest only when probable cause exists for such arrest.

63.  Additionally, defendant City of New York, acting through Charles J. Hynes and the Office of the District Attorney of the County of Kings, had actual and/or de facto policies, practices, customs and/or usages of failing to properly train, supervise, and discipline its Assistant District Attorneys and employees concerning correct practices in conducting investigations, interviewing witnesses and informants, assessing the credibility of witnesses and informants, the initiation and/or prosecution of criminal actions, obligation not to promote or condone perjury and/or assist in the prosecution of innocent persons and the duty and/or obligation of candor toward the court.

64.  Defendant City of New York, acting through aforesaid NYPD and District Attorney, had actual and/or de facto policies, practices, customs and/or usages of wrongfully arresting, illegally stopping, frisking, searching, seizing, abusing, humiliating, degrading and/or maliciously prosecuting individuals who are members of racial/ethnic minority groups such as plaintiffs, who are blacks, on the pretext that they were involved in narcotics, drugs, guns and/or other illicit activities.

65.     Further, the existence of the aforesaid unconstitutional policies, practices, customs and/or usages may be inferred from repeated occurrences of similar wrongful conduct.

66.     For example, in *Floyd v. City of New York*, 813 F. Supp. 2d 417, 422 (S.D.N.Y. 2011), the Southern District of New York observed that the City of New York had been accused of racial profiling on multiple occasions and that it had settled at least one of the lawsuits brought against it concerning racial profiling.

67.     In *Ligon v. City of New York*, 12 Civ. 2274, 2013 U.S. Dist. LEXIS 22383, at *9-*10 (S.D.N.Y. Feb. 14, 2013), the Court determined that the City of New York, acting through the NYPD, engages in illegal and unreasonable stop, frisk, search and seizure. *See also Davis v. City of New York*, 10 Civ. 0699, 2013 U.S. Dist. LEXIS 45601 (S.D.N.Y. March 28, 2013) (same).

68.     Additionally, NYPD Police Officer Michael Carsey was recently convicted of felonies for lying under oath and falsifying information while applying for a search warrant.

69.     Police Officer Carsey's supervisor, Sergeant William Eiseman, had earlier admitted to fabricating facts to justify searching vehicles and homes for cocaine, marijuana and guns, filing false information to obtain search warrants and performing illegal searches of vehicles and homes. That Sergeant Eiseman admitted to perjury and fabricating evidence against innocent persons that he falsely arrested and charged with possession of narcotics and/or illegal drugs, and also admitted to training numerous young police officers to commit similar crimes and/or offenses.

70.     In addition, in or about October 2011, Detective Stephen Anderson testified against Detective Jason Arbeeny, a veteran of the NYPD. That Detective Anderson testified that, among other things, it is a common practice within the NYPD to plant narcotics and/or illegal drugs -- commonly known within the NYPD as "flaking" -- on innocent persons in order to meet arrest quotas. Detective Anderson referred to the practice of planting narcotics and/or illegal drugs on innocent persons as "attaching bodies" to the narcotics

and/or illegal drugs. According to Detective Anderson, this practice "was something I was seeing a lot of, whether it was from supervisors or undercovers and even investigators."

71.     Regarding the issue of arrest quotas, Detective Anderson confirmed that the NYPD requires officers to fill quotas, and testified that even as a detective "you still have a number [of arrests] to reach while you are in the narcotics division."

72.     Recently, a jury determined that officers of the NYPD are permitted, as a policy and/or practice, to fill their arrest quotas by making unlawful arrests. *See Bryant v. City of New York*, Index No. 22011/07 (Sup. Ct. County of Kings Feb. 18, 2011).

73.     Prior to his testimony, Detective Anderson and his partner provided false testimony in court claiming that they purchased cocaine from certain individuals who as surveillance video later confirmed did not have any sort of contact or communication with Detective Anderson and his partner during the time period that Detective Anderson and his partner claimed to have purchased the controlled substances and/or illegal drugs.

74.     That Detective Arbeeny was subsequently convicted of planting controlled substances and/or illegal drugs on a woman and her boyfriend, and was convicted of the charges against him including official misconduct, offering a false instrument for filing and falsifying business records.

75.     That the New York Supreme Court, County of Kings, Criminal Term, Gustin L. Reichbach, J., determined that the NYPD's drug unit has a system of flawed procedures that caused Detective Arbeeny's unlawful actions. Judge Reichbach further determined that the NYPD's drug unit has a widespread culture of corruption and has adopted a "cowboy culture" and practice which he described as "[a]nything goes in the never-ending war on drugs." That Judge Reichbach expressed shock at what he described as "the seeming pervasive scope of misconduct [and even worse] . . . the seeming casualness by which such conduct is employed."

76.     Further, in or about 2008, the New York Supreme Court, County of Kings, Criminal Term, Albert Tomei, J., determined at a Mapp hearing in *People v. Simms*, Indictment No. 11263/07, which was held on or about September 9, 2008, that the police officers involved in the arrest in that matter are "not credible" and that the police officers' "testimony is so obviously fabricated . . . to avoid any Constitutional objections the defendant may have . . . and that [any] property taken . . . is to be suppressed because it was the product of an unlawful arrest and search and seizure."

77.     In addition to the instances of police misconduct described above, several officers of the NYPD -- including but not limited to Detective Christopher Perino, Police Officer Michael Daragjati, Police Officer Henry Tavarez, Police Officer William Masso, Detective Oscar Sandino, Detective Sean Johnstone, Sergeant Michael Arenella, Sergeant Jerry Bowens, Police Officer Michael Pena, Police Officer Nicholas Mina, Detective Kevin Spellman, Sergeant Bobby Hadid and Police Officer Admir Kacamakovic -- have recently been convicted of various similar crimes as those described herein including but not limited to falsifying police reports, perjury, corruption, robbery, gun running, drug dealing, prostitution, theft and assault. Former NYPD Commissioner Bernard Kerik was also recently convicted of corruption and similar crimes as those described herein.

78.     Upon information and belief, many of the named individual defendants have a lengthy substantiated history of police misconduct, fraud and dishonesty. Further, many of the named individual defendants are named defendants in numerous lawsuits in this district and in the Southern District of New York alleging similar claims as those alleged herein -- many of which lawsuits have been settled by defendant City of New York with said defendant making substantial monetary payments to the plaintiffs in the said lawsuits.

79.     In addition to the named individual defendants, several officers of the NYPD assigned to the NYPD-79th Precinct -- as the named individual defendants -- routinely make unlawful arrests charging innocent persons with various crimes and/or offenses.

11

80.     That most of the arrests and charges made by officers assigned to the NYPD-79th Precinct are usually voided and/or dismissed by prosecutors for lack of evidence.

81.     That defendant City of New York has settled numerous lawsuits brought in this district against several officers assigned to the NYPD-79th Precinct in connection with the unlawful arrests and charges described herein. *See*, *e.g.*, *Cymantha Holly v. City of New York* (12 CV 4323); *Nicholls Olwyn v. City of New York* (08 CV 2098).

82.     That defendant City of New York maintained the above described policies, practices, customs or usages knowing fully well that the policies, practices, customs or usages lead to improper conduct by its police officers and employees. In failing to take any corrective actions, defendant City of New York acted with deliberate indifference, and its failure was a direct and proximate cause of plaintiffs' injuries as described herein.

83.     The actions of defendants, acting under color of State law, deprived plaintiffs of their due process rights, and rights, remedies, privileges, and immunities under the laws and Constitution of the United States, treatise, ordinances, customary international law and norms, custom and usage of a right; in particular, the right to be secure in their person and property, to be free from abuse of process, racial profiling, the excessive use of force and the right to due process.

84.     By these actions, defendants have deprived plaintiffs of rights secured by treatise, ordinances, customary international law and norms, custom and usage of a right, and the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, in violation of 42 U.S.C. § 1983.

THIRD CAUSE OF ACTION: 42 U.S.C. § 1985

85.     By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 84 of this complaint as though fully set forth herein.

86.     In an effort to find fault to use against the plaintiffs, defendant officers conspired among themselves and conspired with other individuals to deprive plaintiffs of their constitutional rights secured by 42 U.S.C. § 1983, and by the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to United States Constitution, because of their race, ancestry and/or ethnicity, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

87.     In light of the foregoing therefore, defendant officers engaged in a conspiracy designed to deprive plaintiffs of their constitutional and federal rights in violation of 42 U.S.C. § 1985.

88.     As a direct and proximate result of the misconduct and abuse of authority detailed above, plaintiffs sustained the damages hereinbefore stated.

FOURTH CAUSE OF ACTION: NEW YORK STATE CONSTITUTION, ARTICLE I, §§ 5, 6, 8, 11 & 12

89.     By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 88 of this complaint as though fully set forth herein.

90.     By reason of the foregoing, and by arresting, detaining and imprisoning plaintiffs without probable cause or reasonable suspicion, and harassing and assaulting them and depriving the plaintiffs of due process and equal protection of laws, defendants deprived plaintiffs of rights, remedies, privileges, and immunities guaranteed to every New Yorker by Article I, § 5 (prohibiting cruel and unusual punishments), Article 1, § 6 (providing for due process), Article 1, § 8 (guaranteeing freedom of speech), Article 1, § 11 (prohibiting discrimination in civil rights and providing for equal protection of laws) & Article I, § 12 (prohibiting unreasonable searches & seizures) of the New York Constitution.

91.     In addition, defendant officers conspired among themselves and conspired with other individuals to deprive the plaintiffs of their constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution, and took numerous overt steps in furtherance of such conspiracy, as set forth above.

92.     Defendant officers acted under pretense and color of state law and in their individual and official capacities and within the scope of their respective employments as officers, agents, or employees. Defendant officers' acts were beyond the scope of their jurisdiction, without authority of law, and in abuse of their powers. Defendant officers acted willfully, knowingly, and with the specific intent to deprive the plaintiffs of their constitutional rights secured by Article I, §§ 5, 6, 8, 11 & 12 of the New York Constitution.

93.     Defendants, their officers, agents, servants, and employees were responsible for the deprivation of plaintiffs' state constitutional rights.

FIFTH CAUSE OF ACTION: ASSAULT AND BATTERY

94.     By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 93 of this complaint as though fully set forth herein.

95.     The conduct of defendant officers, as described herein, amounted to assault and battery.

96.     By reason of and as a consequence of the assault, plaintiffs suffered and continue to suffer emotional distress, fear, embarrassment, humiliation, shock, discomfort, loss of liberty, pain and damage, and damage to reputation.

97.     Upon information and belief, defendant City of New York had sufficiently specific knowledge or notice of defendant officers' propensity for acts complained of herein and that their acts could reasonably have been anticipated. However, defendant City of New York failed to take any appropriate actions to assure plaintiffs' safety and security and failed to protect and/or safeguard plaintiffs' interests.

98.     That defendant City of New York's failure to assure plaintiffs' safety and security was a proximate cause of plaintiffs' injuries.

SIXTH CAUSE OF ACTION: OTHER NEW YORK TORTS

99.     By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 98 of this complaint as though fully set forth herein.

100.     The conduct of the defendants, as described herein, amounted to false arrest/imprisonment, illegal and unreasonable stop, frisk, search and seizure, negligence, defamation, conspiracy, special injury, loss of consortium, malicious abuse of process, harassment, tortuous interference, abuse of power, fraud, unjust enrichment, trespass and malicious prosecution.

101.     Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

SEVENTH CAUSE OF ACTION: NEGLIGENT & INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

102.     By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 101 of this complaint as though fully set forth herein.

103.     The defendants engaged in extreme and outrageous conduct, intentionally and recklessly causing severe emotional distress to the plaintiffs.

104.     Plaintiffs' emotional distress has damaged their personal and professional lives because of the severe mental pain and anguish which were inflicted through deliberate and malicious actions including the assault, detention and imprisonment by defendants.

105.     Consequently, plaintiffs have been damaged and hereby demand compensatory and punitive damages in an amount to be proven at trial against each of the defendants, individually and severally.

EIGHTH CAUSE OF ACTION: NEGLIGENT HIRING AND RETENTION OF EMPLOYMENT SERVICES

106.     By this reference, plaintiffs incorporate each and every allegation and averment set forth in paragraphs 1 through 105 of this complaint as though fully set forth herein.

107.     Upon information and belief, defendant City of New York, through its various agencies and departments including the defendants in this action, owed a duty of care to the plaintiffs to prevent the physical and mental abuse sustained by the plaintiffs.

108.    Upon information and belief, defendant City of New York, through its various agencies and departments including the defendants in this action owed a duty of care to the plaintiffs because under the same or similar circumstances a reasonable, prudent and careful person should have anticipated that an injury to the plaintiffs or to those in a like situation would probably result from such conduct described herein.

109.    Upon information and belief, defendant City of New York, knew or should have known through the exercise of reasonable diligence that defendant officers were not prudent and were potentially dangerous.

110.    Upon information and belief, defendant City of New York's negligence in hiring and retaining the defendants proximately caused plaintiffs' injuries.

111.    Upon information and belief, because of defendant City of New York's negligent hiring and retention of defendant officers, plaintiffs incurred and sustained significant and lasting injuries.

WHEREFORE, plaintiffs respectfully pray judgment as follows:

a.    For compensatory damages against all defendants in an amount to be proven at trial;

b.    For exemplary and punitive damages against all defendants in an amount to be proven at trial;

c.    For costs of suit herein, including plaintiffs' reasonable attorney's fees; and;

d.    For such other and further relief as the court deems proper.

<u>DEMAND FOR TRIAL BY JURY</u>

Pursuant to Rule 38 (b) of the Federal Rules of Civil Procedure, plaintiffs demand a trial by jury.

Dated: Brooklyn, New York
        September 4, 2013

                                UGO UZOH, P.C.
                                   /s/
                                _____
                        By:     Ugochukwu Uzoh (UU-9076)
                                Attorney for the Plaintiffs
                                304 Livingston Street, Suite 2R
                                Brooklyn, NY 11217
                                (718) 874-6045

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

SHAMARLON VILLAFANA and SHARON VILLAFANA,

Plaintiffs,

against

THE CITY OF NEW YORK, P.O. JAMES MCCULLOUGH [SHIELD # 31112], CAPTAIN LENZ, SERGEANT WEBER, DETECTIVE ALGIERI, DETECTIVE HIRSCH, DETECTIVE PARKS, DETECTIVE ZAMBRANO, DETECTIVE MCDOWELL, DETECTIVE JENNINGS and P.O. MARIN,

Defendants.

---

**AMENDED SUMMONS & COMPLAINT**
**DEMAND TRIAL BY JURY**

---

**LAW OFFICES OF UGO UZOH, P.C.**
304 LIVINGSTON STREET, SUITE 2R, BROOKLYN, NY 11217
TELEPHONE: (718) 874-6045; FACSIMILE: (718) 576-2685
EMAIL: u.ugochukwu@yahoo.com

---

To:


Defendant(s)/Attorney(s) For Defendant(s).

---

Service of a copy of the within is hereby admitted

Dated:_____

Attorney(s) For:_____

---